Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5453 | **DATE** | 3/14/2002 |
| **CASE TITLE** | Caryl Schrader vs. City of Lake Forest | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendant's Motion for Summary Judgment [#17] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | MAR 15 2002 date docketed | 28 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 3/14/2002 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| | FT/secy courtroom deputy's initials | Date/time received in central Clerk's Office | FT mailing deputy initials | |



United States District Court
Northern District of Illinois
Eastern Division

CARYL A. SCHRADER,            )
                              )
     Plaintiff,               )    No. 00 C 5453
                              )
     v.                       )
                              )
THE CITY OF LAKE FOREST, an   )    Magistrate Judge
Illinois Municipal Corporation, )  Arlander Keys
                              )
     Defendant.               )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff, Caryl A. Schrader, sued Defendant, The City of Lake Forest ("City"), alleging sex discrimination under Title VII of the Civil Rights Act, 42 U.S.C. 2000(e) *et seq.* (West 2002). For the reasons set forth below, the Court grants Defendant's Motion.

**FACTUAL BACKGROUND**

Plaintiff began working for the Forestry Department of the City of Lake Forest ("Forestry Department") in March of 1993, first as a laborer and later as a maintenance worker. (Schrader Dep., at 27.) Plaintiff was one of the few females employed by the Forestry Department. (Schrader Dep., at 126.)

Plaintiff's tenure with the Forestry Department is



fairly colorful. In November of 1993, Plaintiff commenced a sexual relationship with Rick DiNardi, one of her supervisors. (Schrader Dep., at 33.) Forest Department rules did not prohibit such fraternization and Plaintiff was not reprimanded about this affair. However, Plaintiff was reprimanded about a tardiness problem that seemed to develop in early 1995. Plaintiff's 1995 performance review indicated that Plaintiff had a problem with getting to work on time, and had received written reprimands for her tardiness. (November, 1995 Employee Evaluation, Ex. A to Defendant's Rule 56.1 Statement of Facts.)

Plaintiff's April, 1996 performance review noted that Plaintiff's tardiness had not improved, and warned that future lateness would result in "disciplinary action, up to, and including termination." (April, 1996 Personnel Action Report, Ex. B to Defendant's Rule 56.1 Statement of Facts.) Plaintiff's next review occurred one year later. Plaintiff was finally showing up to work on time; she was encouraged to maintain her good work, and to continue her punctuality. (May, 1997 Personnel Action Report, Ex. C to Defendant's Rule 56.1 Statement of Facts.)

During the next few years, Plaintiff was promoted from Laborer to Maintenance Worker II, and was given several

2

salary increases. Her 1998 and 1999 performance reviews mentioned no incidents of tardiness. (May, 1998 Personnel Action Report, Ex. D to Defendant's Rule 56.1 Statement of Facts & May, 1999 Personnel Action Report, Ex. E to Defendant's Rule 56.1 Statement of Facts.)

Unfortunately, it was not all good news for Plaintiff during these years. In November, 1998, Daniel Reeves, another supervisor, requested that Plaintiff cease dating Mr. DiNardi and start dating him. Plaintiff told Mr. Reeves that she would first have to talk with Mr. DiNardi to see how he felt about the situation, and that she would then give Mr. Reeves her answer. Having received no answer from Plaintiff during the next week, Mr. Reeves told Plaintiff that he would talk to Mr. DiNardi himself about dating Plaintiff. According to Plaintiff, when Mr. Reeves told Mr. DiNardi that he was going to start dating Plaintiff, Mr. DiNardi was, at least initially, upset. Mr. DiNardi later informed Mr. Reeves that the decision should be left to Plaintiff. Upon being informed of Mr. DiNardi's reaction, Plaintiff immediately chose Mr. Reeves, although she maintained feelings for Mr. DiNardi. (Shrader Dep. at 45-48, 62.)

3

The split with Mr. DiNardi was, however, less than amicable. In January of 1999, Plaintiff and Mr. DiNardi had a physical altercation at work. Plaintiff received a written warning about fighting on Department premises.

Plaintiff's relationship with Mr. Reeves did not insulate her entirely from criticism.[1] Despite the fact that she was dating her boss, Plaintiff was warned about her frequent tardiness in April of 1999. Plaintiff's May, 1999 performance review cited an oral reprimand for her tardiness and warned her to improve in this area. (May, 1999 Personnel Action Report.)

Officials within the Forestry Department eventually learned about Mr. Reeves' relationship with Plaintiff, and, in April of 1999, reprimanded him for exercising such poor judgment. On April 27, 1999, Mr. Reeves informed Plaintiff about the reprimand, and explained that he could not continue dating her.[2] Concerned about the fallout from the couple's break-up, the Forestry Department designated Peter Gordon as Plaintiff's supervisor in May, 1999.

---

[1] Plaintiff admits that Mr. Reeves frequently let her tardiness slide.

[2] Although the relationship officially ended in April of 1999, Plaintiff indicates that she and Mr. Reeves periodically met for romantic encounters until at least 2000.

4

By November of 1999, Plaintiff's propensity for tardiness increased. In the six-months since her May 1999 review, Plaintiff was late nine times. Plaintiff received at least two oral warnings in conjunction with her tardiness. (November, 1999 Employee Performance Evaluation, Ex. F to Defendant's Rule 56.1 Statement of Facts.) Plaintiff was warned that failure to arrive for work on time would "result in the issuance of a suspension. Should it happen again, that will be the basis for further disciplinary action, up to and including termination." (November, 1999 Employee Performance Evaluation, Ex. F to Defendant's Rule 56.1 Statement of Facts.)

Plaintiff claims that, on three of the nine occasions she was late, she was delayed because she was in bed with Mr. Reeves. (Schrader Dep., at 102.) She asserts that she was never more than a few minutes late for work. (Schrader Dep., at 152.) Furthermore, she was rarely issued a written or oral warning when she was tardy. (Ex. H to Defendant's Rule 56.1 Statement of Facts.)

On December 20, 1999, Plaintiff arrived late for work. This time, the Forestry Department called her bluff; Defendant suspended Plaintiff for one day. (Schrader Dep., at 70). When Plaintiff arrived late to work on April 3,

5

2000 (Reeves Aff. ¶ 5, Ex. F to Defendant's Motion), she was terminated the next day. (Pl. Compt. ¶ 12.)

Plaintiff alleges that, between the time of her suspension and her termination, she had an important conversation with Mr. Reeves' supervisor, Max Slankard. On February 2, 2000, Plaintiff informed Mr. Slankard that she had been repeatedly exposed to pornography and other sexually offensive materials throughout her employment. Plaintiff complained about her intimate relationship with Mr. Reeves, the favoritism in the Forestry Department, and the fact that she had been humiliated by her coworkers and supervisors. Although the two apparently discussed a possible transfer, Plaintiff claims that Mr. Slankard was either unable or unwilling to do anything about her complaints. (Schrader Dep., at 107-108 & 112.)

Plaintiff further claims that she repeatedly complained to her co-workers and Mr. Reeves about their behavior, (Schrader Dep., at 41, 113.) Plaintiff alleges that she was mocked by her co-workers, (Schrader Dep., at 61 & 153), and, after her relationship with Dan Reeves ended, she was avoided. (Schrader Dep., at 153-54.)

**PROCEDURAL HISTORY**

Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC") on June 8, 2000, alleging sex discrimination. On June 15, 2000, Plaintiff received a right to sue letter from the EEOC. Plaintiff timely filed this lawsuit, alleging sex discrimination in violation of Title VII of the Civil Rights Act, with the United States District Court for the Northern District of Illinois on September 5, 2000. Defendant filed its Motion for Summary Judgment on September 21, 2001.

**Summary Judgment Standard of Review**

The Federal Rules of Civil Procedure endorse motions for summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When confronted with a motion for summary judgment, the nonmovant may not rest upon its pleadings, but must present specific facts demonstrating that a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This requires the party opposing summary judgment to do more

than show that "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Summary judgment must be denied if the parties dispute facts that, under governing law, might affect the result of the litigation. *Anderson*, 477 U.S. at 248.

The Court construes all facts and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party when ruling on a motion for summary judgment. *Matsushita*, 475 U.S. at 587. Furthermore, it is the jury, not the court, that determines credibility, weighs evidence, and draws all reasonable inferences from the facts. *Anderson,* 477 U.S. at 255. Since credibility and intent are pivotal issues in the case *sub judice*, as in most employment discrimination cases, this standard is applied with added rigor to the present facts. *Schmidt v. Methodist Hosp. of Ind., Inc.*, 89 F.3d 342, 344 (7th Cir. 1996).

**DISCUSSION**

Plaintiff argues that she was the victim of sexual discrimination when the Forestry Department terminated her, but not Mr. DiNardi or Mr. Reeves. Plaintiff acknowledges that Defendant purportedly terminated her on account of her persistent tardiness, but counters that this is merely a pretext for discrimination. Plaintiff asserts that the real reason Defendant terminated her was because of her romantic relationships with her supervisors. Furthermore, Plaintiff insinuates that she should be entitled to recover for the sexually hostile work environment created by her coworkers and supervisors. The Court will address each argument in turn.

**I. Sexual Discrimination Claim**

Plaintiff claims that Defendant discriminated against her in violation of Title VII by terminating her due to her sexual relationships with her supervisors. In order to establish a prima facie case of discrimination under Title VII, the plaintiff must show: (1) that she was a member of a protected class, (2) that she reasonably performed to her employer's expectations, (3) that she suffered an adverse employment action, and (4) that similarly situated persons outside the protected class were treated more favorably by

9

defendant. *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994). Upon establishing a prima facie case, the burden shifts to Defendant to produce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993). Whereupon, the plaintiff must come forward with sufficient evidence that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Plaintiff faces substantial obstacles in her attempt to satisfy her prima facie case.[3] With regard to the fourth prong of the prima facie test, for example, Plaintiff has failed to present any evidence that male employees who were repeatedly tardy were not terminated. Although Plaintiff is not limited to demonstrating that males were treated more favorably in order to satisfy this element of her prima facie case, she does need to show that her termination was based on her sex. *See Carson v. Bethlehem Steel Corp.*, 82

---

[3] Defendant concedes that, despite the fact that Plaintiff was late numerous times, Plaintiff reasonably performed her job to meet Defendant's expectations.

10

F.3d 157, 159 (7th Cir. 1996) (stating that the favorable treatment of an individual of a different sex than plaintiff helps "raise an inference of discrimination, but it is neither a sufficient nor a necessary condition.") Plaintiff has failed to make such a showing.

Even assuming that Plaintiff could meet her initial burden of making out a prima facie case, however, the Court finds that Plaintiff cannot demonstrate that Defendant's proffered reason for her termination is a pretext for discrimination. *See e.g., Hall v. Bodine Electric Co.*, 276 F.3d 345, 358 (7th Cir. 2002). The City offered evidence that Plaintiff was tardy for work more than 15 times. (Shrader Dep. at 75-76.) Multiple times she was written up, or given oral warnings about her tardiness. (See e.g., Ex. A & E to Defendant's Rule 56.1 Statement of Facts.) In four of her performance reviews, she was instructed to work on her tardiness. (Ex. A, B, E, & F to Defendant's Rule 56.1 Statement of Facts.)

On two separate occasions, Plaintiff was warned that further evidence of tardiness could lead to termination. (Ex. B & F to Defendant's Rule 56.1 Statement of Facts.) The second time Defendant made such a threat, it followed through on its promise; following this warning, Plaintiff

11

was suspended the next time she was late for work. (Shrader Dep. at 70) When she arrived late to work once again, she was terminated the next day.

Plaintiff's attempts to show that her tardiness was not the real reason she was terminated are weak at best. "Pretext means a lie, specifically a phony reason for some action." *James v. Sheahan*, 137 F.3d 1003, 1007 (7th Cir. 1998); *Perdomo v. Browner*, 67 F.3d 140, 144-145 (7th Cir. 1995). An employee may establish that the employer's reason for termination is a pretext indirectly by "proving one of the following: (1) defendant's explanation had no basis in fact, or (2) the explanation was not the 'real' reason, or (3)... the reason stated was insufficient to warrant the adverse job action." *Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1291 (7th Cir. 1997).

Plaintiff does not deny her repeated tardiness, nor does she deny the numerous warnings, but instead claims that her tardiness did not justify her termination. Plaintiff insists that she was tardy only by one to eleven minutes, and that, therefore, her tardiness was not really a big issue.

Plaintiff further attempts to bolster her pretext argument by spreading the blame for her tardiness to Mr.

12

Reeves and the Forestry Department itself. Mr. Reeves is culpable because he allegedly encouraged or caused Plaintiff to remain in bed on several mornings, after she had spent the night with him, thereby causing her to be tardy. The Forestry Department's failure to sanction her each and every time she was tardy apparently cultivated Plaintiff's bad habit. (Ex. H to Defendant's Rule 56.1 Statement of Facts.)

Plaintiff's excuses do not indicate that Defendant's explanation for terminating Plaintiff was false, or was not the real reason it fired her. By portraying her tardiness as a series of small infractions, Plaintiff asks the Court to ignore the fact that she was late for work on more than a dozen occasions, and that she disregarded Defendant's warnings that failure to remedy the problem would result in her termination. The Court declines to take such a myopic view of the facts, and notes that there is nothing suspicious about an employer terminating an employee who repeatedly breaks the rules.

Nor is the Court persuaded by Plaintiff's attempt to pass the blame for her tardiness to Mr. Reeves or the Forestry Department itself. The fact that Plaintiff could not arrive to work on time because she was in bed with Mr. Reeves and overslept, or that Mr. Reeves did not reprimand

13

Plaintiff every time she was tardy, does little to cast doubt on the veracity of Defendant's proffered explanation. Although it might not seem fair to Plaintiff that she should be penalized for being in bed with her boss, the Court will not sit as a super-personnel department, reviewing the wisdom of each of Defendant's business decisions. *See Cowan v. Glenbrook Sec. Serv., Inc.*, 123 F.3d 438, 445 (7th Cir. 1997) (no discrimination where defendant discharged plaintiff for repeated tardiness after being warned he would be fired if he were only one minute late.) Plaintiff's failure to present any evidence indicating that Defendant implemented its tardiness policy in bad faith is fatal to her claim. *Foster v. Arthur Andersen, LLP.*, 168 F.3d 1029, 1035 (7th Cir. 1999) ("we will not second-guess an employer's policies that are facially legitimate.")

Finally, Plaintiff suggests that the timing of her termination was suspicious and suggests pretext. Plaintiff notes that she was terminated two months after she complained to Mr. Slankard about the sexually hostile work environment she allegedly endured while employed by the Forestry Department. Although such evidence might be relevant to the pretext question if Plaintiff had alleged

14

that she was terminated in retaliation for her complaints,[4] neither her Complaint nor her EEOC charge raises such a claim. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (ruling that the plaintiff was limited to arguing claims raised or reasonably related to those raised in her EEOC charge). The Court finds that this evidence does not demonstrate that Plaintiff was terminated because of her gender, or that Defendant's explanation is pretextual.

Notably, Plaintiff has failed to come forward with evidence that Defendant singled her out for special treatment. Plaintiff does not even argue that Defendant took a softer stance on punctuality when other employees arrived late to work. To the contrary, the evidence demonstrates that Defendant showed remarkable patience with Plaintiff, and finally adopted a get tough stance. Plaintiff was given ample warning that Defendant was serious; Plaintiff was reprimanded and suspended before she was finally terminated. Although Plaintiff would ask the

---

[4] The Court further notes that evidence of suspicious timing, standing along, is not conclusive evidence of pretext: "Speculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation . . . . Rather, other circumstances must also be present which reasonably suggest that the two events are somehow related to one another." *Sauzek v. Exxon Coal U.S.A., Inc.*, 202 F.3d 913, 918 (7th Cir. 2000).

15

Court to believe that Defendant's timing is suspicious, Defendant issued its warning and suspended Plaintiff before she complained to Mr. Slankard. In short, Plaintiff has not produced any evidence that Defendant's proffered reason for her termination was a pretext for discrimination. Therefore, Defendant's Motion for Summary Judgment is granted.

## II. Hostile Environment Claim

Plaintiff claims that Defendant created and maintained a hostile work environment, in violation of Title VII, through sexual harassment by co-workers and superiors. However, Plaintiff's allegations of sexual harassment are not properly before the Court.[5]

In order for a plaintiff to recover for sexual harassment, the plaintiff must make such a claim in her EEOC charge. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). This rule provides the EEOC and employers with the opportunity to settle disputes through conference, conciliation, and persuasion, and gives employers some

---

[5] Even if Plaintiff had included such a claim in her EEOC charge, the Court notes that most of the alleged egregious behavior occurred more than 180 days before Plaintiff filed her EEOC charge. Indeed, it appears that Plaintiff was subjected to little, if any, harassing behavior within the 180 day window.

warning of the conduct about which the employee is complaining. *Id; Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). Therefore, claimants are limited to claims that are "like or reasonably related to" claims raised in their EEOC charges. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996).

In this case, Plaintiff failed to raise a claim of sexual harassment in her EEOC charge. Plaintiff's EEOC Charge alleged only that she was the victim of sex discrimination; she failed to provide any facts that might indicate that she was subjected to a sexually hostile work environment.

The Court may not infer such a claim from the sex discrimination claim Plaintiff did allege, because her sexual harassment claim is not "like or reasonably related to" the sex discrimination claim Plaintiff alleged in her EEOC charge. *Cheek,* 97 F.3d at 202. "Ordinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination." *Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497, 503 (7th Cir. 1994). An examination of Plaintiff's EEOC charge shows that she exclusively complained of sex discrimination and gave no indication of a possible sexual

17

harassment claim. Thus, the Court may not consider Plaintiff's hostile environment claim.[6]

**CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has failed to demonstrate that Defendant's reason for terminating her was a pretext for sex discrimination. And while the Court sympathizes with Plaintiff's complaints regarding the environment at the Forestry Department, Plaintiff's sexual harassment claim is not properly before the Court.

**IT IS THEREFORE ORDERED** that:

Defendant's Motion for Summary Judgment be, and the same hereby is, **GRANTED**.

MARCH 14, 2002   ENTER:

*[signature]*

ARLANDER KEYS
United States Magistrate Judge

---

[6] Despite the fact that Plaintiff failed to raise a sexual harassment claim in her EEOC charge, Defendant failed to note this in its briefs, and, instead, argued against the existence of a hostile work environment.